UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>FRANK DUANE BAKER, JR.,<br><br>Defendant. | 3:14-CR-30044-RAL<br><br>**OPINION AND ORDER ON MOTION FOR COMPASSIONATE RELEASE** |

A federal grand jury returned a superseding indictment charging Frank Duane Baker, Jr. (Baker) on one count of aggravated sexual abuse by force in violation of 18 U.S.C. §§ 1153, 2241(a) and 2246(2)(A), three counts of sexual contact with a child in violation of 18 U.S.C. §§ 1153, 2244(a)(3), and 2246(3), and three counts of aggravated sexual abuse of a child in violation of 18 U.S.C. §§ 1153, 2241(c), and 2246(2)(C), (D). Doc. 22. On July 14, 2014, Baker appeared before this Court and entered a guilty plea to the aggravated sexual abuse by force count. Doc. 35. On November 3, 2014, this Court held a sentencing hearing in Baker's case and imposed a custody sentence of 132 months to be followed by five years of supervised release. Docs. 43 at 2; 45 at 2–3, 5. At that time, the remaining counts in the superseding indictment were dismissed, and Baker was remanded into custody. Docs. 43 at 2; 45 at 1.

Baker is currently incarcerated at Petersburg Low Federal Correctional Institution (Petersburg Low FCI) and has filed a pro se motion for compassionate release, citing his health conditions in combination with the global COVID-19 pandemic as justification. Doc. 47. The Federal Public Defender Office for the Districts of North and South Dakota (FPD) has submitted a supplement to Baker's motion, and the Government has responded in opposition. Docs. 53, 55.

1

FPD has replied. Doc. 57. This Court has considered Baker's motion, and for the reasons stated herein, denies his motion at this time.

I.      Background

Baker's conviction resulted from a sexual assault he perpetrated on a minor victim who was under his care at the time. Docs. 44 at ¶¶ 7-8; 39 at 1–2. Between June 1, 1995, and August 31, 1996, Baker, who was between 23 and 24 years old at the time, was at the home of his sister, Marie Thomas, in Wakpala, South Dakota. Doc. 39 at 1. Baker was babysitting his sister's children, which included the victim, S.T.T., and her siblings. Id. S.T.T. came out of the shower, and Baker touched S.T.T.'s genitalia with his hand, skin-to-skin. Id. at 1–2. Baker also touched S.T.T.'s genitalia with his barehand on two other occasions: once when she was eating breakfast and once when she was sleeping. Doc. 44 at ¶ 8. During one of these assaults, Baker inserted his fingers into S.T.T.'s genitalia. Id. At the time of the assaults, S.T.T. was five or six years old. Id.; Doc. 39 at 1.

Under the sentencing guidelines, Baker's total offense level for this offense was 30 and Baker was in criminal history category II. Doc. 44 at ¶¶ 27, 39, 60. This meant that Baker's advisory guideline range was 108 months to 135 months custody. Id. at ¶ 60. This Court held a sentencing hearing in Baker's case on November 3, 2014, and heard arguments on objections to the presentence investigation report (PSR). Doc. 43. Ultimately, the court amended the PSR based on the objections. Id. at 1; Doc. 44. After hearing argument from both parties as to the appropriate sentence and hearing from the victim and the victim's family, this Court sentenced Baker to 132 months custody with a five-year term of supervised release. Docs. 43 at 2; 45 at 2–3. Baker has been in custody since April 16, 2014, and is currently incarcerated at Petersburg Low FCI. Docs.

5; 50 at 187; see also Find an Inmate, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Sept. 1, 2020).

In early 2020, a novel coronavirus, COVID-19, quickly spread across the United States and infiltrated correctional institutions. As a new virus, COVID-19 has presented somewhat of a mystery to medical professionals and society in general. Some people can contract the virus and be completely asymptomatic, while other people develop complications and die from the illness. The Centers for Disease Control and Prevention (CDC) have identified certain underlying health conditions that put individuals at higher risk for a severe form of the illness if they contract the disease. Among those at higher risk are individuals with cancer, chronic kidney disease, obesity, serious heart conditions, sickle cell disease, and Type 2 diabetes. See People with Certain Medical Conditions, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Sept. 1, 2020).

Baker currently suffers from the following medical conditions: Type 2 diabetes, asthma, hypertension, angina pectoris, major depressive disorder, and hyperlipidemia. Doc. 50 at 177–80. He has now filed a motion for compassionate release with this Court based on those conditions and his increased susceptibility to complications from COVID-19 if he contracts the disease. Doc. 47.

## II.     Legal Standard

Generally, a "court may not modify a term of imprisonment once it has been imposed," except in a few, narrow circumstances. 18 U.S.C. § 3582(c). The compassionate release statute

as amended by the First Step Act of 2018 provides one of those narrow avenues through which a sentence may be modified. The compassionate release statute provides in pertinent part that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment ... after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)   extraordinary and compelling reasons warrant such a reduction; ...
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A). "The district court has broad discretion in determining whether proffered circumstances warrant a reduction in sentence." United States v. Loggins, 966 F.3d 891, (8th Cir. 2020). Ultimately, the defendant bears the burden of establishing that a sentence reduction is warranted. See United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016).

### III.  Discussion

Baker submitted a request for compassionate release to the warden of his institution on May 1, 2020, outlining some of his medical conditions and his possible release plan. Doc. 47 at 7–9. Baker's request was submitted more than thirty days ago, and the BOP has not submitted a motion for compassionate release on Baker's behalf. Therefore, this Court may entertain Baker's motion directly.

In determining whether compassionate release is justified, this Court must consider the sentencing factors in 18 U.S.C. § 3553(a), determine whether "extraordinary and compelling reasons" warrant a sentence reduction, and evaluate whether a sentence reduction is consistent

with the Sentencing Commission's applicable policy statements. See 18 U.S.C. § 3582(c). The sentencing factors found in 18 U.S.C. § 3553(a) instruct this Court to consider the applicable guidelines issued by the Sentencing Commission; "the nature and circumstances of the offense and the history and characteristics of the defendant;" the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" to adequately deter criminal conduct, to protect the public; and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a). This Court also should consider the need to avoid unwarranted sentence disparities among similarly situated defendants. 18 U.S.C. § 3553(a)(6).

In conducting its analysis on compassionate release motions, this Court begins by considering the applicable § 3553(a) sentencing factors. The nature and circumstances of the offense are detailed above and are disturbing. Those facts, along with Baker's criminal history points, resulted in a 108-135 month guideline range under the sentencing guidelines. Baker's personal history and characteristics indicate that as a child he resided in McLaughlin, Mobridge, Standing Rock, and Wakpala, South Dakota. Doc. 44 at ¶ 46. He moved between his mother and father's separate residences, but was raised mostly by his aunt. Id. at ¶¶ 44, 46. He was not raised around his siblings. Id. at ¶ 44. When Baker was 18 years old, he married his former teacher; the marriage lasted a few years and resulted in no children. Id. at ¶ 46. Baker was self-employed in the arts and craft area, and he performed some ranch work. Id. at ¶ 56. He has possibly some substance abuse issues, specifically with alcohol. Id. at ¶¶ 52–54. A guideline range sentence like the one imposed was necessary for several reasons. First, a lengthy sentence adequately reflected the seriousness of the offense and provided just punishment. Second, the type of criminal conduct at issue here requires a powerful deterrent, and the 132-month sentence was designed to protect

the public and to provide Baker with substance abuse, sex offender, and mental health treatment in an effective manner. Doc. 45 at 2; see Doc. 50 at 188, 191. Overall, the 132-month sentence was sufficient to achieve the § 3553(a) sentencing factors, but it was not greater than necessary.

Baker has now served approximately 55% of his full sentence and has served approximately 65% of his "statutory term." Doc. 50 at 187. Since he entered BOP custody, Baker, now age 48[1], has completed other education courses, including reentry classes and drug programs, and is enrolled in GED courses. Id. at 188, 191. He has seven discipline reports, but appears to have had consistent and productive work details. Id. at 189, 192–93.

This Court next determines whether "extraordinary and compelling" reasons exist to modify a sentence. Congress has directed the Sentencing Commission to describe and provide examples of what constitutes "extraordinary and compelling" reasons with respect to the compassionate release statute. 28 U.S.C. 994(t). The Sentencing Commission provided such examples in the commentary to United States Sentencing Guideline 1B1.13. Those reasons include the defendant's terminal illness or debilitating physical or mental condition, the defendant's age in combination with the proportion of his sentence served, and certain family circumstances. U.S.S.G. § 1B1.13 cmt. n.1(A)–(C). The Sentencing Commission also included a "catch all" provision which allows one to find "extraordinary and compelling" reasons other than those specifically listed "[a]s determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13 cmt. n.1(D). However, since the First Step Act was passed, the Sentencing Commission has not updated its policy statement because it has not had a quorum. As a result, district courts have questioned whether the policy statement still applies and whether courts may consider other "extraordinary and compelling" reasons under the "catch all" provision. See United States v.

---

[1] For some reason, Baker in his pro se motion claimed that he was 64 years of age. Doc. 47. All of his court and medical records show him to be 48 years old presently. Doc. 44 at 2; Doc. 50.

6

Mondaca, No. 89-CR-0655 DMS, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (discussing the discord among district courts); United States v. Spears, No. 98-0208-SI-22, 2019 WL 5190877, at *3 (D. Or. Oct. 15, 2019) (same); United States v. Brown, 411 F. Supp. 3d 446, 449–50 (S.D. Iowa 2019) (same). Many district courts have determined that the discretion given to the Director of the BOP by the Sentencing Commission extends to federal judges and allows them to consider "extraordinary and compelling reason[s] other than" those specifically described. United States v. Condon, No. 3:12-cr-00091-10, 2020 WL 2115807, at *3 (D.N.D. May 4, 2020) (listing cases that found federal judges may apply the "catch all" provision of U.S.S.G. § 1B1.13 comment note 1(D)).

Baker argues primarily that he qualifies for release under the "catch all" provision of U.S.S.G. § 1B1.13 comment note 1(D), but argues in the alternative that he would qualify under comment note 1(A)(ii). Comment note 1(A) provides in relevant part that "extraordinary and compelling" reasons may exist if the defendant is "suffering from a serious physical or medical condition... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). However, Baker does not claim that it is his serious physical or medical conditions that makes him unable to provide self-care in his correctional facility. Rather, he argues that the conditions of confinement, a factor not contemplated by the comment note, make it difficult or impossible to practice the type of self-care recommended by the CDC. Therefore, Baker cannot establish "extraordinary and compelling" reasons to justify a sentence reduction under comment note 1(A)(ii).

This Court next considers Baker's circumstances under the "catch all provision." Baker argues that his underlying health conditions combined with the increased risks he faces if he

7

contracts COVID-19 establish an "extraordinary and compelling" reason other than those specifically identified to justify a sentence reduction. The COVID-19 pandemic has impacted this country and its economy in extraordinary ways. However, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

COVID-19 has infiltrated Petersburg Low FCI, but it has not had catastrophic effects. Petersburg Low FCI currently has 96 active inmate infections of COVID-19 and four active COVID-19 cases among the facility's staff; two staff have recovered from the illness, and the facility has reported no deaths. See COVID-19, Coronavirus, Federal Bureau of Prisons https://www.bop.gov/coronavirus/ (last visited Sept. 1, 2020). The question becomes whether Baker's medical conditions—Type 2 diabetes, asthma, hypertension, angina pectoris, major depressive disorder, and hyperlipidemia—combined with the conditions of confinement during the COVID-19 pandemic justify compassionate release.

The CDC has recognized that people with Type 2 diabetes are at increased risk of severe illness if they contract COVID-19. See People with Certain Medical Conditions, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Sept. 1, 2020). Baker has Type 2 diabetes. Baker receives medical care at Petersburg Low FCI and is prescribed several medications to manage his Type 2 diabetes. But Baker's Type 2 diabetes is considered "uncontrolled" due to Baker's non-compliance. Doc. 50 at

17. Medical records show that Baker has a history of non-compliance with taking his prescribed diabetes medication. Doc. 51 at 186, 196, 686. When Baker takes his medication, his diabetes is managed, and he does well. Id. at 176, 837, 1088. This Court cannot say to what extent Baker's life is threatened by the existence of COVID-19 in Petersburg Low FCI, especially considering Baker's non-compliance and that the BOP has taken precautions to protect him and his fellow inmates. See BOP Implementing Modified Operations, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Sept. 1, 2020).

Baker also suffers from hypertension and asthma. Hypertension and asthma (moderate to severe) do present risk factors for severe complications of a COVID-19 infection, but the extent of those risks is yet unknown, particularly if his conditions are well-controlled. The CDC has not recognized Baker's other medical conditions—angina pectoris, major depressive disorder, and hyperlipidemia—as significant risk factors for contracting or developing a severe illness from COVID-19. Additionally, based on the medical records, all five of these conditions appear to be stable, managed, and well-controlled when Baker is compliant with his medication. Doc. 51 at 176, 427, 540, 1088, 1010, 1372–75, 1410, 1424, 1563.

Baker has served a little over half of his 132-month sentence for sexually abusing his 6-year-old niece while he was babysitting her and her siblings. Baker appears, to his credit, to have worked on improving himself in custody. But the original sentence was chosen with care, considering Baker's and his community's needs and all of the other applicable sentencing factors. Despite the risks posed by COVID-19, this Court does not find "extraordinary and compelling reasons" to justify a sentence modification because such a reduction would not be sufficient to achieve the goals of sentencing.

**IV.   Conclusion and Order**

Therefore, it is hereby

ORDERED that Baker's motion for compassionate release, Doc. 47, is denied.

DATED this __1st__ day of September, 2020.

                                    BY THE COURT:

                                    ROBERTO A. LANGE
                                    CHIEF JUDGE